**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PNC EQUIPMENT FINANCE, LLC | ) | |
| | ) | No. 12-cv-03074 |
| Plaintiff, | ) | |
| v. | ) | Judge Joan H. Lefkow |
| | ) | |
| | ) | |
| BONNIE ZILBERBRAND, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

PNC Equipment Finance, LLC (hereinafter "PNC") filed a two-count complaint against defendant, Bonnie Zilberbrand ("Zilberbrand"), alleging violations of the Illinois Uniform Fraudulent Transfer Act, 740 ILL. COMP. STAT. 160/1 *et seq*. ("IUFTA"). PNC alleges that Zilberbrand's husband, Ronald Zilberbrand (Debtor), made a transfer of property to Zilberbrand which was fraudulent under the IUFTA. PNC seeks to set aside that transfer. Before the court is Zilberbrand's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons set forth below, Zilberbrand's motion to dismiss [dkt. 12] is denied.

**BACKGROUND**[2]

**I.     Debtor's Preexisting Obligations to PNC**

Beginning in 2006, PNC's predecessor entered into a series of loan transactions with

---

[1] This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). The parties are of diverse citizenship because the sole member of PNC is PNC Bank, N.A., which has its principal place of business in Pennsylvania and is incorporated in Delaware and Zilberbrand is a citizen of Illinois. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b).

[2] The facts in the background section are taken from the complaint and exhibits attached thereto and the court draws all reasonable inferences in PNC's favor. *See Virnich* v. *Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

entities controlled by Debtor. In connection with the loans, Debtor executed guaranties obligating him to repay approximately $28.1 million. Under the guaranties, PNC could pursue an action against Debtor independently of the other borrowers.[3] The borrowers subsequently defaulted under the promissory notes. On August 25, 2010, PNC sent notices of default to entities controlled by Debtor demanding payment. On September 29, 2011, PNC made a second demand for payment. On December 6, 2011, PNC filed suit in the Court of Common Pleas of Hamilton County, Ohio against Debtor and other borrowers on the promissory notes.

## II.     Purchase of the Property 2025 North Mohawk Street in Chicago, Illinois

On March 4, 2008, Debtor purchased the property located at 2025 North Mohawk Street in Chicago, Illinois ("the property") for $3.95 million. On March 24, 2008, Zilberbrand and Debtor, who had been married before and subsequently divorced, executed a prenuptial agreement in anticipation of their second marriage. The prenuptial agreement provided that Debtor would transfer his interest in the property to Zilberbrand within 90 days of their marriage.[4] On June 13, 2008, Zilberbrand and Debtor remarried. On July 22, 2008, Debtor

---

[3] PNC, or its predecessor, made loans to Casafin VII, LLC; Casafin, VIII, LLC; Lear 45210, Inc.; Flymex 450, LLC; Flymex 550, LLC; and Flymex 5502, LLC that Debtor guarantied. The borrowers sought financing to purchase aircrafts. Limited liability companies of which Debtor was a member were also members of the companies that obtained financing from PNC or its predecessor.

[4] Paragraph 7 of the prenuptial agreement provided,

> Within ninety (90) days of the marriage of BONNIE and RON, RON shall provide to BONNIE in her individual name (or as she may direct in writing to RON) as her non-marital property from his non-marital property title to the residence located at 2025 North Mohawk, Chicago, Illinois (the "Mohawk Property"), which property is presently owned by RON, free of any mortgage encumbrance or subject to a mortgage with respect to which RON shall be the sole obligor; provided, however, if for any reason RON shall not own the Mohawk Property subsequent to the marriage of the parties and prior to providing title to BONNIE, then RON shall provide to BONNIE in her individual name (or as she may direct in writing to RON) as her non-marital property from his non-marital property the sum of four million

(continued...)

transferred his interest in the property to Zilberbrand via a quit claim deed. On July 24, 2008, the quit claim deed was filed with the Cook County Recorder of Deeds.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 586 (7th Cir. 2002). To survive a 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s pleading threshold, the pleader

---

[4](...continued)
dollars ($4,000,000).

(Dkt. 12–3 at 7 ¶ 7.)

must detail "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Gen. Elec. Capital Corp.*, 128 F.3d at 1078 (internal quotation marks omitted); *Vicom, Inc.* v. *Harbridge Merchant Servs.*, *Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Stated differently, the complaint must include the "who, what, when, and where of the alleged fraud." *Uni*Quality, Inc.* v. *Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotation marks omitted).[5]

## ANALYSIS

PNC brings claims under the IUFTA alleging constructive fraud and actual fraud seeking to set aside Debtor's transfer of the property to Zilberbrand.[6] Actual fraud takes place where the debtor has the specific intent to hinder his creditors while constructive fraud occurs where the debtor conveys assets for inadequate consideration resulting in his insolvency despite preexisting or contemplated debts. *See Cordes & Co., LLC* v. *Mitchell Cos., LLC*, 605 F. Supp. 2d 1015, 1020 (N.D. Ill. 2009). Zilberbrand argues that PNC's IUFTA claims fail because (1) they are barred by the statute of limitations; (2) Debtor received reasonably equivalent value for the

---

[5] Zilberbrand does not address the applicability of Rule 9(b)'s heightened pleading standard to PNC's allegations. Because PNC's IUFTA allegations sound in fraud, the heightened pleading standard of Rule 9(b) is applicable. *See B.E.L.T., Inc.* v. *Wachovia Corp.*, 403 F.3d 474, 477–78 (7th Cir. 2005); *In re Lancelot Investors Fund, L.P.*, No. 08 B 28225, 2012 WL 718631, at *4 n.1 (Bankr. N.D. Ill. Mar. 2, 2012) ("Defendant brings this motion pursuant to Rule 8 pleading requirements. The Court notes, however, that when a claim is based on fraud the heightened pleading standards of Rule 9(b) apply.").

[6] The difference between constructive fraud claims under § 5(a)(1) and § 6(a) is that under the former the creditor's claim can arise before or after the transfer while under the latter the creditor must have a claim against the debtor before the transfer. PNC alleges constructive fraud under § 5(a)(1) and actual fraud under § 5(a)(2) in count I. PNC alleges constructive fraud under § 6(a) in count II. Although PNC alleges both constructive fraud and actual fraud in count I, the court will consider whether PNC has pleaded claims for either type of fraud under the IUFTA. *See Hatmaker*, 619 F.3d at 743 ("[P]laintiffs in federal courts are not required to plead legal theories.").

transfer of the property; (3) Debtor was not insolvent at the time of the transfer; and (4) PNC did not allege that Debtor acted with the requisite intent to hinder, delay, or defraud PNC to show actual fraud.

I.   **Whether the Statute of Limitations Bars PNC's IUFTA Claims**

Zilberbrand argues that PNC's claims under the IUFTA are barred by the statute of limitations because PNC filed its complaint on April 25, 2012, which was four years after Debtor agreed to transfer the property to Zilberbrand. PNC contends that the complaint is timely filed because the transfer took place when the quit claim deed was filed on July 24, 2008.

The statute of limitations for IUFTA claims requires they be made "within four years of when the transfer was made or the obligation was incurred." 740 ILL. COMP. STAT. 160/10(a); 10(b). The IUFTA provides that "a transfer is made with respect to an asset that is real property . . . when the transfer is so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee." 740 ILL. COMP. STAT. 160/7(a)(1). Under Illinois law, a transferee's title to real property is protected against a bona fide purchaser only after recording of the deed. 765 ILL. COMP. STAT. 5/30; *Bay State Milling Co.* v. *Martin*, 46 F. App'x 369, 370 (7th Cir. 2002). For purposes of the IUFTA, Debtor's transfer of the property was effectuated when the deed was recorded on July 24, 2008. PNC filed its complaint within four years of the recording of the deed making it timely under the IUFTA.

Zilberbrand argues that Debtor transferred an interest in the property on March 24, 2008 when he assumed an obligation in the prenuptial agreement to transfer title of the property to

5

Zilberbrand.[7]  The Illinois Uniform Premarital Agreement Act, however, provides that a "premarital agreement becomes effective upon marriage."  750 ILL. COMP. STAT. 10/5.  Although executed on March 24, 2008, the prenuptial agreement did not become effective until June 13, 2008, when Zilberbrand and Debtor remarried.  Zilberbrand's marriage to Debtor, not the execution of the prenuptial agreement, triggered Debtor's obligation to transfer the property to Zilberbrand within 90 days, which he did on July 24, 2008 by filing the quit claim deed.[8]  Accordingly, PNC's complaint filed on April 25, 2012 is not barred by the statute of limitations.

## II. Whether Debtor Received Reasonably Equivalent Value for the Transfer of the Property

To show constructive fraud under § 5(a)(2) and § (6)(a), PNC must demonstrate, in part, that Debtor transferred the property "without receiving a reasonably equivalent value in exchange for the transfer . . . ."  740 ILL. COMP. STAT. 160/5(a)(2); (6)(a).  The IUFTA provides in relevant part that "[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied."  740 ILL. COMP. STAT. 160/4(a).  Factors courts consider in determining reasonably equivalent value include "the fair market value of what was transferred and what was received; whether the transaction took place at arm's length; and the good faith of the transferee."  *Cordes & Co.*, 605

---

[7] Zilberbrand attached the prenuptial agreement as an exhibit to her motion to dismiss but it was not included as an exhibit with the complaint nor was it referenced therein.  Still, the court will consider paragraph 7 in the prenuptial agreement regarding Debtor's promise to transfer the property to Zilberbrand.  Because this portion of the prenuptial agreement implicates the statute of limitations, the court concludes that it is central to PNC's claim and will consider it part of the pleadings.  *See* Fed. R. Civ. P. 12(d); *188 LLC* v. *Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

[8] Zilberbrand cites no authority for the proposition that a contractual obligation in a prenuptial agreement providing for a future transfer of property after the marriage constitutes a transfer under the IUFTA at the time of the prenuptial agreement's execution.

F. Supp. 2d at 1021 (citing *Barber* v. *Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997)). Ultimately, whether a party received reasonably equivalent value is a question of fact. *See In re Image Worldwide, Ltd.*, 139 F.3d 574, 576 (7th Cir. 1997).

  PNC contends that Debtor transferred the property valued at approximately $4 million to Zilberbrand for no consideration. Zilberbrand argues that Debtor's transferring the property satisfied an antecedent debt contained in the prenuptial agreement and thus constituted reasonably equivalent value. While marriage can constitute valid consideration in a prenuptial agreement, *see In re Marriage of Barnes*, 755 N.E.2d 522, 527, 324 Ill. App. 3d 514, 258 Ill. Dec. 139 (Ill. App. Ct. 2001), reasonably equivalent value requires "something more than consideration to support a contract." *In re Image Worldwide*, 139 F.3d at 580; *In re Joy Recovery Tech. Corp.*, 286 B.R. 54, 75 (Bankr. N.D. Ill. 2002) ("Unlike contract law, nominal consideration is inadequate to satisfy the reasonably equivalent value standard."). Indeed, courts outside of this circuit have held that intangible benefits to family members are insufficient to constitute reasonably equivalent value.[9] *See In re Hinsley*, 201 F.3d 638, 643–44 (5th Cir. 2000) (applying the Texas Uniform Fraudulent Transfer Act and noting that "[i]ntangible, non-economic benefits, such as preservation of marriage, do not constitute reasonably equivalent value."); *In re Bargfrede*, 117 F.3d 1078, 1080 (8th Cir. 1997) (applying bankruptcy law and providing that "[t]o the extent [the debtor] received indirect, non-economic benefits in the form of a release of a possible burden on the marital relationship and the preservation of the family relationship, we find these sufficiently analogous to other intangible, psychological benefits to

---

[9] The IUFTA is a uniform act and the phrase "reasonably equivalent value" is derived from § 548(a)(2) of the Bankruptcy Code. *See In re Image Worldwide*, 139 F.3d at 577 ("[W]e can look to interpretations of 'reasonably equivalent value' from § 548 cases, as well as cases from courts interpreting other states' versions of the UFTA for assistance in predicting what an Illinois court would do.").

conclude that they do not constitute reasonably equivalent value.").[10]

Moreover, the determination of value, however, is viewed from the vantage point of the creditor. *See In re Joy Recovery Tech. Corp.*, 286 B.R. at 75. Here, the prenuptial agreement obligated Debtor to transfer the property to Zilberbrand upon their marriage. Zilberbrand's marriage to Debtor provided no value to Debtor's creditors, such as PNC. Indeed, Zilberbrand does not contend that the antecedent debt was for any other pre-existing obligation. Because the promise to marry does not constitute reasonably equivalent value, PNC's complaint sufficiently alleges that Debtor did not receive reasonably equivalent value for the transfer of the property. Accordingly, Zilberbrand's motion to dismiss PNC's constructive fraud claims under the IUFTA in counts I and II is denied.

### III. Whether Debtor Was Insolvent at the Time of the Transfer

To show constructive fraud under § (6)(a), PNC must demonstrate that "the debtor was insolvent at [the time of the transfer] or the debtor became insolvent as a result of the transfer." 740 ILL. COMP. STAT. 160/6(a). Under the IUFTA, "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." 740 ILL. COMP. STAT. 160/3(a). In addition, the IUFTA provides that "[a] debtor who is generally not paying his debts as they become due is presumed to be insolvent." 740 ILL. COMP. STAT. 160/3(b). Whether a debtor is insolvent is a question of fact. *See Grochocinski* v. *Schlossberg*, 402 B.R. 825, 836 (N.D. Ill. 2009); *In re McCook Metals, L.L.C.*, No. 05 C 2990, 2007 WL 4287507, at

---

[10] In *In re Image Worldwide*, *Ltd.*, 139 F.3d at 578, the Seventh Circuit held that indirect benefits can be taken into account when determining reasonably equivalent value. The indirect benefits in *In re Image Worldwide* arose in the corporate context, and are distinct from an amorphous promise to marry. *See id.* The Seventh Circuit noted that "a court will not recognize an indirect benefit unless it is fairly concrete." *Id.* (internal quotation marks omitted).

*5 (N.D. Ill. Dec. 4, 2007).

The date of the transfer for purposes of determining Debtor's insolvency is the date of the deed's filing, which was July 24, 2008. Prior to that time, PNC alleges that Debtor was the guarantor for seven loans obligating him to repay approximately $28.1 million. On July 24, 2008, PNC alleges that Debtor's liabilities exceeded the total amount of his assets at fair valuation and that Debtor was insolvent or would become so after the transfer of the property. (Compl. ¶¶ 38, 39, 45.) Subsequent to the transfer, and after the promissory notes became due in connection with Debtor's guaranties, he defaulted on all of the loans. These allegations detail that Debtor transferred the property to decrease the value of his assets in light of the impending maturity of the promissory notes that he guaranteed. *See Apollo Real Estate Inv. Fund, IV, L.P.* v. *Gelber*, 935 N.E.2d 963, 976, 403 Ill. App. 3d 179, 343 Ill. Dec. 735 (Ill. App. Ct. 2010) (presumption of constructive fraud arises where "the debtor has failed to retain sufficient property to pay the indebtedness."). In sum, PNC alleges that Debtor was insolvent or became insolvent as a result of the transfer to obviate PNC's ability to collect on the notes.[11]

---

[11] Zilberbrand relies on documents attached to her motion to dismiss to show that Debtor was solvent at the time of the transfer. Namely, Zilberbrand relies on Exhibit B to the prenuptial agreement, which provided that Debtor's net worth as of February 29, 2008 was in excess of $38,000,000. Zilberbrand also relies on Debtor's affidavit to establish that he was solvent at the time of the transfer. These documents were not included as exhibits to PNC's complaint. *See* Fed. R. Civ. P. 12(d). A court may consider documents attached to a motion to dismiss only "if they are referred to in the plaintiff's complaint and are central to his claim." *Wright* v. *Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *see also Levenstein* v. *Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) (noting that a court's considering documents attached to a motion to dismiss that were not referenced in the complaint is a narrow exception "aimed at cases interpreting, for example, a contract."). Debtor's assets listed in the prenuptial agreement and his affidavit detailing his net worth are not referenced in PNC's complaint nor are they central to its claim. Indeed, Zilberbrand's reliance on these documents underscores the factual inquiry necessary to determine whether Debtor was solvent at the time of the transfer. Accordingly, the court will not consider this material and declines to exercise its discretion in converting Zilberbrand's motion to dismiss into one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Hecker* v. *Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009).

Accordingly, Zilberbrand's motion to dismiss PNC's constructive fraud claim under the IUFTA in count I is denied.

**IV.     Whether PNC Pleaded a Claim for Actual Fraud under the IUFTA**

Although Zilberbrand attacks PNC's complaint under Rule 8, as PNC is alleging actual fraud, Rule 9(b)'s heightened pleading standard also applies. To demonstrate actual fraud under the IUFTA, PNC must demonstrate that Debtor "made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." 740 ILL. COMP. STAT. 160/5(a)(1). Zilberbrand contends that PNC failed to plead actual fraud with the requisite specificity.

The IUFTA delineates badges of fraud as circumstantial evidence in determining whether a debtor acted with intent to defraud, including whether the transfer was to an insider; the debtor retained possession or control of the property after the transfer; the debtor received reasonably equivalent value for the asset transferred; and the debtor was insolvent or became insolvent shortly after the transfer. 740 ILL. COMP. STAT. 160/5(b)(1); (2); (8); (9); *see also Frierdich* v. *Mottaz*, 294 F.3d 864, 869–70 (7th Cir. 2002); *Grede* v. *Bank of N.Y. Mellon*, 441 B.R. 864, 880–81 (N.D. Ill. 2010). PNC relies on these badges of fraud to show actual intent and alleges that Zilberbrand was an insider; Debtor retained possession or control of the property after the transfer; Debtor did not receive reasonably equivalent value for the transfer; and Debtor was insolvent or became insolvent shortly after the transfer. *See* Compl. ¶ 46(a)-(e).[12]

First, PNC argues that Zilberbrand was Debtor's wife at the time of the transfer and was

---

[12] PNC also alleges that Debtor's failing to retain sufficient property to pay his indebtedness also evidences actual fraud; however, the IUFTA does not include this factor as a specific badge of fraud. Rather, failure to retain sufficient property to pay indebtedness is indicative of constructive fraud.

thus an insider. Indeed, the IUFTA defines "insider" as "a relative of the debtor." 740 ILL. COMP. STAT. 160/2(g)(1)(A). Here, at the time of the transfer on July 24, 2008, Debtor and Zilberbrand had remarried, and for purposes of the IUFTA, Zilberbrand was an insider. Second, PNC alleges that Debtor retained possession of the property after the transfer and continues to live there.[13] Last, as noted above, PNC alleges that Debtor did not receive reasonably equivalent value for the transfer and was insolvent or became insolvent as a result of the transfer. In sum, PNC alleges that Debtor transferred the property to Zilberbrand before the promissory notes matured to defraud his creditors. PNC has thus alleged actual fraud with sufficiently particularity under the IUFTA and Rule 9(b). *See Gen. Elec. Capital Corp.*, 128 F.3d at 1079–80; *RehabCare Grp., E., Inc.* v. *Camelot Terrace, Inc.*, No. 11 C 6557, 2012 WL 1246560, at *7 (N.D. Ill. April 13, 2012). Accordingly, Zilberbrand's motion to dismiss PNC's actual fraud claim under the IUFTA in count I is denied.

---

[13] Zilberbrand contests that she and Debtor retained possession of the property but relies on materials outside the pleadings (*i.e.*, the affidavit she submitted in addition to Debtor's affidavit), and the court will not consider those affidavits in deciding the present motion to dismiss.

## CONCLUSION

Zilberbrand's motion to dismiss PNC's complaint [dkt. 12] is denied.

Dated: March 28, 2013      Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge